## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NAVIGATORS INSURANCE COMPANY,
on its own behalf and as subrogee of
SANTA FE DINING, INC., and 60 PLUS
INC. d/b/a MARIA'S NEW MEXICAN
KITCHEN,

     Plaintiffs,

     v.                            No. 1:25-cv-00896-SMD-KK

MASSACHUSETTS BAY INSURANCE
COMPANY; and
HANOVER INSURANCE COMPANY,

     Defendants.

## MEMORANDUM ORDER

THIS MATTER is before the Court on Defendants Massachusetts Bay Insurance Company and Hanover Insurance Company's Motion to Dismiss in Part, filed October 6, 2025. Doc. 6 ("Mot. to Dismiss"). Plaintiff Navigators Insurance Company filed its response on October 20, 2025. Doc. 8 ("Pl.'s Resp."). Defendants filed their reply on November 3, 2025. Doc. 17 ("Defs.' Reply"). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The following recitation of events is based on Plaintiff's complaint, Doc. 1-1 ("Compl."), and the relevant facts set forth in the parties' briefings on the Motion to Dismiss. This case arises from a bad-faith failure to settle disputes between insurers. Plaintiff Navigators Insurance Company ("Navigators") is a second-layer excess insurer. Compl. ¶ 1; Mot. to Dismiss at 1. Defendant Massachusetts Bay Insurance Company ("MBIC") is a primary insurer. Compl. ¶ 1.

Defendant The Hanover Insurance Company ("Hanover") is a first-layer excess insurer and the parent company of MBIC. *Id.*; Doc. 2 at 1.

These three insurers provide coverage to Maria's New Mexican Kitchen and Santa Fe Dining, Inc. (the "Insureds"). Compl. ¶ 1. Maria's New Mexican Kitchen is owned and operated by Santa Fe Dining, Inc., which is a wholly owned subsidiary of The Peters Corporation. *Id.* ¶ 15.

The dispute stems from a personal injury lawsuit in state court. *Id.* ¶ 12. In that action, the underlying plaintiff, Megan Jade Gonzalez, tripped on a large pothole in the parking lot of Maria's New Mexican Kitchen, a restaurant located in Santa Fe, New Mexico. *Id.* Ms. Gonzalez suffered serious injuries to her knee, hip, neck, and spine, incurring hundreds of thousands of dollars in medical expenses alone. *Id.* ¶ 13.

As of the date of the accident, the Insureds were covered by three insurance policies that apply in the following order, *Id.* ¶ 14:

1.  A primary Commercial General Liability policy issued by MBIC to The Peters Corporation with a policy limit of $1 million (the "MBIC Policy");

2.  A Commercial Follow Form Excess and Umbrella policy issued by Hanover to The Peters Corporation with a policy limit of $5 million (together with the MBIC Policy, the "Hanover Policies");

3.  A follow form Excess Liability policy issued by Navigators to The Peters Corporation with a policy limit of $25 million (the "Navigators Policy").

Prior to filing suit, Ms. Gonzalez made a settlement demand to Hanover to resolve her claims against the Insureds. *Id.* ¶ 18. According to Navigators, Hanover declined the demand on the grounds that Ms. Gonzalez was 100% at fault; nevertheless, Hanover made a pre-suit offer of $30,000. *Id.* ¶¶ 20–21. Settlement negotiations failed, and Ms. Gonzalez proceeded to file a

complaint.  Navigators alleges that the matter could have been resolved pre-suit had Hanover conducted an honest, fair investigation and balanced the interests of the parties.  *Id.* ¶ 22.

On August 12, 2021, Ms. Gonzalez filed suit against Maria's New Mexican Kitchen and Santa Fe Dining, Inc. in the First Judicial District Court of New Mexico, Santa Fe County.  *Id.* ¶ 1. Ms. Gonzalez alleged that the Insureds failed to properly maintain the area surrounding Maria's New Mexican Restaurant and that their negligent or reckless actions caused her to suffer preventable injuries.  *Id.* ¶ 25.  Ms. Gonzalez sought compensatory and punitive damages for past and future medical expenses, pain and suffering, loss of enjoyment of life, and loss of household services.  *Id.* ¶ 26.  By that time, she had undergone a three-level cervical fusion and incurred approximately $300,000 in medical bills.  *Id.* ¶ 38.

At the mediation of the underlying lawsuit on June 2, 2023, Ms. Gonzalez made a settlement demand of $8 million.  *Id.* ¶ 30.  According to Navigators, Hanover failed to inform the Insureds of this demand.  *Id.* ¶ 31.  The parties did not reach an agreement during the mediation. *Id.* ¶ 32.  Later that month, Hanover served a $500,000 offer of settlement, which Ms. Gonzalez rejected.  *Id.* ¶ 34.

Hanover's counsel informed Hanover that he expected a compensatory award between $400,000 and $2 million, though he noted the potential verdict range was very large.  *Id.* ¶ 39.  He further warned that Santa Fe County juries are "notoriously liberal," described the venue as "one of the most dangerous" in the United States, and cautioned that a "runaway verdict," or an award that far exceeds a case's expected value, was likely.  *Id.*  Hanover's counsel also noted that Ms. Gonzalez's attorney recently obtained a $66 million jury verdict in a similar case in Santa Fe.  *Id.* ¶ 36.

The parties made another attempt to resolve the case.  Hanover's counsel informed Ms. Gonzalez's counsel that Hanover would appreciate a demand under $5.5 million.  *Id.* ¶ 41.  Ms. Gonalez's counsel responded that Ms. Gonzalez was "willing to reduce the demand to $5.25 million."  *Id.* ¶ 43.  Hanover did not accept the $5.25 million offer, notwithstanding that the amount both fulfilled its request and remained within its $6 million policy limit.  *Id.* ¶ 43.  Instead, Hanover countered with a bracket of $600,000 to $1.4 million, which Ms. Gonzalez rejected.  *Id.* ¶¶ 44–45.

Navigators alleges Hanover rejected the $5.25 million settlement demand without informing the Insureds, despite knowing that the jury could award up to $2 million in compensatory damages alone, alongside the risk of a "runaway verdict."  *Id.* ¶ 52.  Navigators further argues that Hanover failed to investigate the claim properly, act reasonably to resolve the matter while demands were within policy limits, or make a good-faith effort to settle before the jury verdict.  *Id.* ¶ 75.

On April 11, 2024, the jury returned a $31 million verdict for Ms. Gonzalez, awarding $10 million in compensatory damages and $21 million in punitive damages.  *Id.* ¶ 64.  Navigators alleges Hanover provided notice of the trial and the $31 million verdict for the first time on the following day.  *Id.* ¶ 65.

Ms. Gonzalez offered to settle the lawsuit for $31 million, agreeing to waive substantial claims for interest.  *Id.* ¶ 67.  Navigators alleges that Hanover unilaterally tendered its combined $6 million in policy limits plus interest directly to Ms. Gonzalez, forcing Navigators to step in and settle the lawsuit to protect the Insureds.  *Id.* ¶ 72.  Although Navigators demanded that Hanover fully fund any settlement exceeding its limits, Hanover refused to pay any amount beyond its $6 million policy limit.  *Id.* ¶ 76–77.

Navigators filed this action in the First Judicial District Court of New Mexico, asserting three counts against Hanover and MBIC: bad-faith failure to settle, violation of the Unfair Insurance Practices Act ("UIPA"), and violation of the Unfair Practices Act ("UPA"). *Id.* ¶ 78–88, 89–97, 98–110. Defendants subsequently removed the case to this Court based on diversity jurisdiction. Doc. 1 at 2.

Navigators seeks to recover the full settlement amount paid in the underlying Gonzalez action, pre- and post-judgment interest, and attorney's fees. Compl. at 20–21. It also requests punitive damages for bad-faith failure to settle under Count I and treble damages pursuant to the UPA under Count III. *Id.* Defendants now move to dismiss the complaint to the extent it requests any relief beyond the settlement amount paid, including the claims for punitive damages, statutory treble damages, interest, and fees. Mot. to Dismiss at 2.

**LEGAL STANDARD**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accepting all well-pled allegations as true and construing them in the light most favorable to the plaintiff, the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robinson v. Kuhr Trucking, LLC*, 831 F. App'x 385, 388 (10th Cir. 2020). Mere "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 556.

"[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025); *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023). Courts impose a "low bar for surviving a motion to dismiss," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

## DISCUSSION

I.      The Parties Agree Navigators May Assert Subrogation Claims.

Navigators sues as an equitable subrogee of the Insureds, seeking to recoup its settlement payment in the underlying personal injury action, plus interest, attorneys' fees, and punitive damages. Subrogation allows an insurer that has paid an insured's claim to "step into the shoes" of its insured and seek recovery from the actual wrongdoer. *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 148 P.3d 806, 809 (N.M. Ct. App. 2006).

"A right to subrogation also exists if an insurance company pays a claim that should have been paid by another insurer." *Id.*; *see also Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1117 (N.M. 1990) (holding that the plaintiff insurer had a subrogation right against the defendant insurer because the plaintiff insurer was required by law and fiduciary obligations to defend).

New Mexico courts "have long recognized an insurer's subrogation rights, and that they are entitled to protection." *White v. Sutherland*, 585 P.2d 331, 334 (N.M. Ct. App. 1978). No

6

formal assignment to an insurer is required under equitable subrogation. *Old Republic Ins. Co. v. Eclipse Aviation Corp.*, No. A-1-CA-36614, 2019 WL 6170481, at *3 (N.M. Ct. App. Oct. 10, 2019). "[W]hen an insurer pays the claim of its insured under the insured's policy, it is deemed to be subrogated . . . to recovery of its payments against the person who caused the loss." *Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 838 (N.M. 1995).

Principles of equitable subrogation encourage insurers to protect their insured's interest promptly, then resolve disputes among themselves afterwards. *Sw. Steel*, 148 P.3d at 810. The elements of equitable subrogation are satisfied here: Navigators made a required payment under its excess liability policy because Defendant allegedly failed, in bad faith, to settle the underlying personal injury lawsuit and subsequently forced the payout. *See Eclipse Aviation Corp.*, 2019 WL 6170481, at *4. The parties do not dispute that Navigators has standing to sue under equitable subrogation. Mot. to Dismiss at 5.

II.    New Mexico Law Limits a Subrogated Insurer's Recovery to Amounts Actually Paid.

a. Summary of the Parties' Positions

The core disagreement centers on whether a subrogated insurer can recover more than its actual payout. Defendants argue that it cannot. They maintain that because subrogation exists only to make an insurer whole, any recovery of statutory treble damages, punitive damages, or attorneys' fees fall outside its equitable scope. Mot. to Dismiss at 7. To support this, Defendants cite cases that limit an insurer's subrogation rights to the extent of its actual payments. *See Sw. Steel*, 148 P.3d at 812; *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 51 P.3d 1172, 1179 (N.M. Ct. App. 2002); *Health Plus of N.M., Inc. v. Harrell*, 958 P.2d 1239, 1242 (N.M. Ct. App. 1998).

Plaintiff contends that it may recover statutory, punitive damages and attorneys' fees because subrogation entitles an insurer to the same rights and remedies as its insured. *See* Pl.'s

Resp. at 5.  Plaintiff relies on cases defining a subrogated insurer's rights and remedies as identical to those of the subrogee regarding the claim.  *See New Mexico State Highway & Transp. Dep't v. Gulf Ins. Co.*, 996 P.2d 424, 429 (N.M. Ct. App. 2000); *Health Plus*, 958 P.2d at 1243.  Plaintiff argues that punitive damages and treble damages are plainly "rights and remedies" of the insured that it may recover by "standing in the shoes of the insured."  Pl.'s Resp. at 6.

The Court finds that Defendants' interpretation more accurately reflects New Mexico law on equitable subrogation.

    b.  New Mexico Law Provides No Basis for a Subrogated Insurer to Recover More Than It Paid.

There is a dearth of New Mexico authority squarely addressing whether a subrogated insurer can recover more than its actual payments, such as recovering statutory treble damages, punitive damages, or attorneys' fees.  While no case directly addresses punitive damages in this context, a line of New Mexico cases prescribes that an insurer may recover *to the extent* that it has paid the claims of its insured.  The parties offer competing interpretations of two key cases: *Southwest Steel Coil* and *Quality Chiropractic*.  148 P.3d at 809; 51 P.3d at 1179.

Defendants argue that *Southwest Steel* favors their position because a citation in the case mentions "limiting subrogation rights to the amounts paid by insurer," implying that Plaintiff cannot recover more than what it paid.  *Sw. Steel*, 148 P.3d at 810.

*Southwest Steel* did not involve a dispute between insurers, but rather an insured suing its liability insurer for declining to defend and indemnify in an underlying personal injury lawsuit. *Id.* at 808.  The insured brought breach of contract and statutory claims against the employer liability insurer, alleging that the settlement expenses it incurred should have been covered by the defendant rather than a non-party general liability insurer.  *Id.*  The New Mexico Court of Appeals held that the plaintiff lacked standing to sue for the funds already paid by the non-party insurer.

*Id.* at 807.  The court held that the non-party general liability insurer was the only real party in interest entitled to pursue equitable subrogation against the employer liability insurer.  *Id.* Consequently, claims for the subrogated amounts belonged solely to the insurer that actually paid those funds.  *Id.*

However, the court did not preclude the insured from recovering losses outside the subrogated amounts, specifically, any independent damages for rights not covered by the non-party insurer's payment.  *Id.*  The court listed examples of such non-subrogated, independent damages, including "unpaid compensatory damages," "punitive damages," "nominal damages plus cost," and "statutory damages" under the UPA.  *Id.* at 810–11.  Additionally, the court noted that if the plaintiff insured proves bad faith or malice by the defendant insurer, the plaintiff may potentially recover punitive damages.  *Id.* at 811.  This holding implies that punitive damages fell outside the scope of subrogated funds under these specific facts.  *Id.*

Navigators argues Defendants misconstrue *Southwest Steel* and that the case does not limit a subrogated insurer's coverage to what it paid.  Instead, Navigators contends that the "sole import" of the case is that an insured who has suffered damages retains standing to pursue independent claims for "those damages that [the insured] may have suffered independent of any amount that [the non-party insurer] paid in the underlying case."  Pl.'s Resp. at 8.

The Court acknowledges Navigators' argument that *Southwest Steel* does not specify which damages a subrogated insurer may recover, as the case primarily addresses which claims remain with the insured after its insurer has paid the underlying loss.  However, while *Southwest Steel* does not provide a list of recoverable damage, it clearly distinguishes between amounts that have been paid by an insurer and those that have not.  Even Navigators' own version of the holding differentiates the amount that "[the non-part insurer] paid in the underlying case" and the unpaid

amounts that the insured retains standing to pursue.  Pl.'s Resp. at 8; *see also Sw. Steel*, 148 P.3d at 810.

*Southwest Steel* does not conclusively bar subrogated insurers from recovering punitive damages or statutory damages.  Rather, *Southwest Steel* focuses on the distinction between the amounts already paid by the insurer and those remaining unpaid in the underlying litigation.  While jurisdictions are split on whether public policy allows insurance coverage for punitive damages, New Mexico does not prohibit such coverage, instead allowing parties to freely contract for it.  *See Jaramillo v. Providence Washington Ins. Co.*, 871 P.2d 1343, 1351 (N.M. Ct. App. 1994). Consequently, if a policy does not expressly exclude coverage for conduct that is grossly negligent, reckless, wanton, or willful, it may be deemed to cover resulting punitive damages.  *See Baker v. Armstrong*, 744 P.2d 170, 171. (N.M. 1987).

Under *Southwest Steel*, a subrogated insurer may recover punitive damages through equitable subrogation so long as it paid those damages in the underlying case pursuant to its coverage.  Such a payment clearly falls within the category of "what has been paid out."  Indeed, part of Navigators' payment in the underlying case was for a punitive damages award; however, that fact is inconsequential here.  Navigators does not merely seek to recover what it paid to settle the underlying personal injury action; it seeks to recover amounts it did not pay, specifically "three times the amount Navigators paid to settle the Gonzalez action" and punitive damages arising from the present case rather than the underlying one.  The plain language of *Southwest Steel* does not support a subrogated insurer's recovery of amounts it never disbursed.

The parties also disagree on the implications of *Quality Chiropractic*.  Like *Southwest Steel*, this case is not directly on point as to whether a subrogated insurer can recover more than it paid in the underlying action.  Instead, the case addresses whether an assignee of personal injury

claims can recover funds, with the court concluding that New Mexico law permits the subrogation of personal injury claims. *See Quality Chiropractic*, 51 P.3d at 1177. The court distinguished between subrogation and the assignment of contingency fees, explaining why New Mexico law allows the former but prohibits the latter. *Id.* at 1179. The court concluded that a subrogated party has a pre-existing duty to pay, which prevents strangers from unnecessarily involving themselves in litigation. *Id.* As part of its analysis, the court addressed the limits on damages a subrogated party may recover. *Id.* Much like *Southwest Steel*, *Quality Chiropractic* did not categorize specific types of damage as recoverable or non-recoverable; instead, it simply distinguished between what has been paid and what has not been paid:

> [T]he doctrine of subrogation applies by necessity *only* to benefits paid directly for damages resulting from an injury-causing accident. An insurer will be subrogated to the extent that it has paid out benefits to the tort victims for injuries caused by the tortfeasor. In contrast, if accident victims could use assignments as currency, they could issue assignments for any purpose and *any amount*.

*Id.* (emphasis added).

Accordingly, *Quality Chiropractic* more clearly suggests that although a subrogated insurer "step into the shoes of the insured," it is not entitled to collect "any amount" based on claims that the insured may have initially held.

    c.  Navigators' Remaining Authority Fails to Support Its Position.

Navigators cites several other New Mexico cases to support its claimed right to recover more than it paid in the underlying action. However, these authorities are either cited out of context or are less persuasive than *Southwest Steel* and *Quality Chiropractic*. The cases Navigators relies on state generally that a subrogated insurer is entitled to "all the rights and remedies belonging to the insured" or that it stands "in the shoes of the insured."

Navigators first cites *Gallup Med Flight*, which includes the footnote that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the

insured against a third party with respect to any loss covered by the policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Gallup Med Flight, LLC v. Builders Tr. of New Mexico*, 240 F. Supp. 3d 1161, 1184 n.21 (D.N.M. 2017). There are two problems with relying on this citation to support Navigators' argument. First, the language is a verbatim quotation of Black's Law Dictionary appearing in a footnote rather than the substance of the court's holding. Second, the quotation itself qualifies those "rights and remedies" as being "with respect to any loss covered by the policy." *Id.* This qualification is consistent with *Southwest Steel* and *Quality Chiropractic*: a subrogated insurer may recover what it paid with respect to a loss covered by the policy, but no more.

Navigators then cites *Health Plus* for the proposition that "[b]y standing in the shoes of the insured, the insurance company has the same rights and is subject to the same defenses as the insured." *Health Plus*, 958 P.2d at 1243. This citation is taken out of context. Earlier in the same opinion, the case reiterates that a subrogated insurer may "step into the shoes of the insured and *collect what it has paid*." *Id.* at 1242 (emphasis added). When read in its entirety, the authority contradicts Navigators' position that it is entitled to collect more than its actual payments.

Similarly, Navigators cites *New Mexico State Highway* for the proposition that "the surety can assert the right of subrogation to protect itself and may use the same remedies that were available to the government for its protection from the contractor." *New Mexico State Highway*, 996 P.2d at 429. However, the opinion later clarified: "On remand, the district court should, of course, keep in mind that the surety's right extend *only to amounts it paid* on behalf of the contractor." *Id.* at 430 (emphasis added). When read in whole, the case contradicts Navigators' position.

The Court does not dismiss Navigators' claims solely by distinguishing each cited authority and finding them inadequate. The Court understands Navigators' argument that punitive damages are generally available in New Mexico as a form of equitable remedy and that several New Mexico cases state the subrogated party enjoys all rights and remedies of the insured. However, this argument is uncompelling for two reasons. First, the very cases that include such broad statements often immediately clarify that the subrogated party enjoys those rights only "to the extent" of what it actually paid.

Second, as discussed above, *Southwest Steel* and *Quality Chiropractic* demonstrate a distinction between two categories of payments: what has been paid and what has not. A subrogated insurer has a claim on what it paid, while the insured retains any remaining claims. Several New Mexico cases limit a subrogated party's recovery to the amounts actually disbursed, and no New Mexico authority directly supports the position that a subrogated insurer can recover punitive damages beyond its actual outlays. This Court declines to create such a right.

On the other hand, if Navigators paid pre- and post-judgment interest in the underlying lawsuit, it should be able to recover those amounts if it prevails on these claims. There is no New Mexico caselaw indicating that such interest should not be recovered.

III.   Plaintiff's Statutory Standing Independent of Subrogation Is Not Properly Before the Court.

Navigators alleges that even if it is not subrogated to the Insured's rights, it has adequately pled facts showing direct causes of action against Defendants under the Unfair Practices Act ("UPA") and the Unfair Insurance Practices Act ("UIPA"), meeting the legal requirements to seek punitive damages directly. Mot. to Dismiss at 8 n.4.

Defendants respond that this argument fails to provide an independent basis for denying the relief requested in the pending motion to dismiss. Specifically, Defendants argue that

13

regardless of whether Navigators has direct claims under the UPA or the UIPA, the Court should dismiss any claims for damages exceeding the benefits paid as the Insureds' subrogee in the underlying action. Defs.' Reply at 10. Furthermore, Defendants contend that Navigators' argument misstates the complaint, asserting that Navigators pled both the UPA and UIPA counts as subrogation claims brought solely in its capacity as "Insureds' subrogee". Compl. ¶¶ 96, 110.

Under New Mexico law, "the only rights that an excess insurer has to sue a primary insurer are 'subrogation rights derived from standing in the shoes of the insured.'" *Am. Guarantee & Liab. Ins. Co. v. Liberty Mut. Fire Ins. Co.*, No. 13-277 MV/LFG, 2014 WL 11514675, at *3 (D.N.M. Mar. 24, 2014), *vacated on other grounds*, No. 13-277 MV/LFG, 2015 WL 11117309 (D.N.M. Feb. 17, 2015) (citing *Design Pros. Ins. Cos., Inc. v. St. Paul Fire & Marine Ins. Co.*, 940 P.2d 1193, 1195 (N.M. Ct. App. 1997)). Indeed, "the majority of courts in other jurisdictions . . . similarly have determined that an excess insurer cannot assert a direct cause of action against a primary insurer that alleges the primary insurer owed the excess insurer [a] duty of good faith," or any other duty of care. *Am. Guarantee*, 2014 WL 11514675, at *3 (citing *Steadfast Ins. Co. v. Agric. Ins. Co.*, 2013 WL 6439671, No. 10-5113 (10th Cir. Dec. 10, 2013)).

Despite New Mexico caselaw suggesting that an excess insurer may face hurdles in bringing a direct action against a primary insurer without relying on equitable subrogation, the Court does not address Navigators' statutory standing to raise independent claims under the UPA and the UIPA because Navigators did not purport to proceed independently under the UPA and the UIPA without relying on equitable subrogation. Rather, Navigators pled all three counts exclusively as an equitable subrogee. Because Navigators did not assert these claims as independent causes of action, the Court declines to address Navigators' standing to raise such claims. Moreover, "in assessing whether a plaintiff has stated a claim for relief, a court must

restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown*, 124 F.4th at 1264.

IV.    Navigators' Prayer for Attorney's Fees Survives Dismissal Under Rule 12(b)(6).

Navigators demands attorney's fees in all three counts: bad faith failure to settle, violation of the UIPA, and violation of the UPA. Defendants argue that the claim for attorneys' fees likewise exceeds the scope of subrogated damages because the fees incurred in this action are not benefits paid to or on behalf of the insured.

The general rule in New Mexico is that absent a statute or court rule, each party to a litigation must pay its own attorney's fees. *McClain Co. v. Page & Wirtz Const. Co.*, 694 P.2d 1349, 1350 (N.M. 1985); *Martinez v. Martinez* 678 P.2d 1163, 1168 (N.M. 1984); *State v. Lujan,* 348, 93 P.2d 1002, 1003(N.M. 1939).

On the other hand, both the UIPA and the UPA contain fee shifting language that allows a prevailing party to recover attorney's fees and costs if specific criteria are met.

Section 57-12-10(C) of the UPA provides in part: "The court shall award attorney's fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails." *Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1403 (10th Cir. 1993). Section 59A-16-30 of the UIPA similarly allows attorneys' fees to the prevailing party if the violation was willful. N.M. Stat. Ann. § 59A-16-30 (2026).

As for Navigators' common-law bad faith claim in Count I, if the American Rule applies, the prevailing party is not entitled to collect attorneys' fees from the losing party unless a specific statute or a contract requires it. *See McCall*, 235 F.3d at 1216. The Tenth Circuit has explained, however, that under a narrow exception to the American Rule, a trial court may award attorney's fees, even without a statute or contract, when a party's opponent acts "in bad faith, vexatiously,

15

wantonly, or for oppressive reasons." *Id.* (quoting *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984)). Awarding fees under the bad faith exception is within a trial court's discretion. *Id.*; *see also Johnston v. Town of Clayton*, No. CV 03-1062 JCH/ACT, 2004 WL 7337413, at *4 (D.N.M. Dec. 1, 2004).

There is a scarcity of New Mexico caselaw indicating that attorneys' fees should not be awarded in a subrogation action when the opposing party's conduct rises to the level of bad faith. As a result, accepting all well-pled allegations as true and construing them in the light most favorable to Navigators, the request for attorneys' fees is plausible on its face. The claim therefore satisfies the pleading standard of Rule 12(b)(6) to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Because Navigators satisfies the Rule 12(b)(6) pleading standard, the Court denies the motion to dismiss as to the request for attorney's fees.

V.    Navigators' Prayer for Costs Survives Dismissal Under Rule 12(b)(6).

Navigators also seeks "expenses in this action" for all three counts. Few New Mexico decisions hold that Navigators cannot recover costs and expenses in subrogation actions. On the contrary, NMSA 1978, § 39-3-30 provides a statutory presumption that a prevailing party is entitled to recover costs. "In all civil actions or proceedings of any kind, the party prevailing shall recover his costs against the other party unless the court orders otherwise for good cause shown." *Garcia v. New Mexico Dep't of Transp.*, 535 P.3d 728, 735 (N.M. Ct. App. 2023).

"The burden is on the losing party to demonstrate that an award of costs would be unjust or that other circumstances justify a denial or reductions of costs." *OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 514 P.3d 40, 53 (N.M. Ct. App. 2022). "The most common bases for denying costs to prevailing defendants have been the indigency of the losing plaintiff, coupled with good faith of the indigent and the non-frivolous nature of the case." *Garcia*, 535 P.3d at 735;

16

*Gallegos ex rel. Gallegos v. Sw. Cmty. Health Servs.*, 872 P.2d 899 (N.M. Ct. App. 1994). Navigators' request for costs meets the Rule 12(b)(6) pleading standard, making dismissal premature at this stage of the litigation.  The Court denies the motion to dismiss as to the request for costs.

**CONCLUSION**

**IT IS ORDERED** that Defendants' Motion to Dismiss in Part is **GRANTED** in part and **DENIED** in part as described above.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**